LILLIAN SCHRAG, who sued as LILLIAN ULLRICH, a minor, Defendant in Error, *vs.* THE CHICAGO CITY RAILWAY COMPANY, Plaintiff in Error.

*Opinion filed October 16, 1914—Rehearing denied Dec. 3, 1914.*

1. EVIDENCE—*scientific books not admissible—extent to which they may be read from.* Scientific books are not admissible in evidence before a jury and cannot be read from to contradict an expert witness except where such expert assumes to base his opinion upon the work of a particular author, in which case the work may be read in evidence to contradict him. (*City of Bloomington* v. *Shrock,* 110 Ill. 219, followed; *Chicago Union Traction Co.* v. *Ertrachter,* 228 id. 114, explained.)

2. SAME—*when improper cross-examination will reverse.* In a personal injury case, where the only question is the extent of the plaintiff's injury and the chief witnesses for the defendant are two medical experts, who base their opinions upon their own observation and experience without referring to any text books or text writers upon the subject, it is reversible error to permit plaintiff's counsel to exhibit text books to the witnesses in the presence of the jury and so cross-examine them as to give the jury the impression the witnesses were testifying against recognized authority on the subject.

FARMER, J., dissenting.

WRIT OF ERROR to the Branch "B" Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. DUANE J. CARNES, Judge, presiding.

CHARLES LEROY BROWN, for plaintiff in error.

JAMES C. McSHANE, for defendant in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

The defendant in error, Lillian Ullrich, who was then a minor, by William Ullrich, her next friend, brought suit in the circuit court of Cook county against the Chicago City Railway Company, plaintiff in error, to recover for injuries alleged to have been sustained in a street car accident in the city of Chicago. She recovered a judgment for $5500, which was affirmed by the Appellate Court for the First District. The cause has been brought to this court for further review by writ of *certiorari*.

The points chiefly relied on for reversal are, (1) that the court permitted an improper use of medical books in the cross-examination of expert witnesses called on behalf of plaintiff in error; and (2) that the court erred in permitting the wife of the next friend to testify in behalf of defendant in error.

At the beginning of the trial in the circuit court the plaintiff in error stated that the motorman who was driving the car which caused the injury to defendant in error was dead, and as he was the only person by whom plaintiff in error could have proved the manner in which the accident occurred, it was in no position to offer any evidence on the question of liability, and it was admitted that the defendant was negligent. The only question left, therefore, was to determine the extent of plaintiff in error's liability, and the only controverted question on the trial was whether defendant in error suffered any serious injury.

It was the contention of plaintiff in error that, aside from some trivial bruises, the ailments from which defendant in error suffered after the accident were due wholly to conditions which existed prior to that time, and that the accident neither caused nor contributed to cause those ailments. On the other hand, defendant in error claimed

that before she was injured her health was good but that after the accident she suffered from hysteria and peritonitis, and that those afflictions were the result of the accident. Considerable evidence, both expert and lay, was introduced by the respective parties on this question. Evidence was introduced on behalf of plaintiff in error which tended to prove that defendant in error had suffered from hysteria prior to the time of the accident, and expert evidence was offered to show that the accident neither caused nor contributed to the hysteria which she suffered thereafter. Two expert witnesses were called on behalf of plaintiff in error who testified that hysteria can never be the result of or caused by accident but that it is congenital. Each of these witnesses based his opinion upon his own personal observations and experience and did not rely upon any text books or writers upon this subject. It was the theory of defendant in error that hysteria could be caused by an accident, and that it was so caused in this case and was known as traumatic hysteria. Upon the cross-examination of each of the expert witnesses called by plaintiff in error counsel for defendant in error was permitted, over objection, to ask the witness if there was not a difference of opinion among the authorities as to whether hysteria was hereditary or antedated convulsion; whether the witness knew of Dr. Johnson's work on surgical diagnosis,—counsel stating in this connection that he desired to show that hysteria may exist without any previous history or any previous disposition; whether it was not true that much less importance was attached by the Germans to the necessity of pre-disposition as a cause of hysteria than by the French; whether the witness' source of knowledge of hysteria upon which he was basing his opinion was derived entirely and solely from his own experience and not by consulting any of the authorities on the subject; whether his information was based upon the writings of recognized authorities on that subject; whether the witness was acquainted with what the authors

of the text books of schools of Europe and America said in reference to hysteria; whether the witness could give the name of a single book that lays down the proposition that hysteria may not result from traumatism; whether the witness was acquainted with Bailey's work on the diseases of the nervous system; whether he had read Starr's work on nervous diseases, and whether he was familiar with a book by Archibald Church on nervous and mental diseases. During this cross-examination counsel for the defendant in error exhibited, in the presence of the jury, various text books, stating, at times, the one he was reading from during the cross-examination, and at one time stating that he had all the books on the subject. When an objection was made to the question whether the witness could name a single book which states that hysteria may not result from traumatism, before the court could rule upon the objection counsel for defendant in error said: "Well, all right; if it is understood that he is not relying upon the writings of the world and the teachings of other men, but only upon his own experience, I am willing to let it go at that." At another time during the cross-examination, counsel for defendant in error, in explaining why he withdrew a question, made the statement: "I am not looking for errors; he (counsel for plaintiff in error) wants some little exception; I do not want him to have any exceptions."

The only question involved on the trial was the extent of plaintiff in error's liability. The two expert witnesses referred to were the chief witnesses called by plaintiff in error to support its theory that the disease from which defendant in error was suffering was not the result of the injuries received in the accident. This testimony was on a material question and was one of vital importance to plaintiff in error, and it was important that no error should intervene in the conduct of the cross-examination.

The law is well settled in this State that scientific books may not be admitted in evidence before a jury, and that

such books cannot be read from to contradict an expert witness except where such expert assumes to base his opinion upon the work of a particular author, in which case that work may be read in evidence to contradict him. In *City of Bloomington* v. *Shrock*, 110 Ill. 219, this question was involved and the authorities were reviewed at some length, and it was there so held. Among the reasons we gave in support of this holding were the following: "Where a witness says a thing or a theory is so because a book says so, and the book, on being produced, is discovered to say directly to the contrary, there is a direct contradiction which anybody can understand. But where a witness simply gives his opinion as to the proper treatment of a given disease or injury and a book is produced recommending a different treatment, at most the repugnance is not of fact but of theory, and any number of additional books expressing different theories would obviously be quite as competent as the first. But since the books are not admissible as original evidence in such cases, it must follow that they are not admissible on cross-examination, where their introduction is not for the direct contradiction of something asserted by the witness but simply to prove a contrary theory."

Defendant in error relies upon *Chicago Union Traction Co.* v. *Ertrachter*, 228 Ill. 114, in support of the position that an expert witness may be cross-examined as to what the authorities say upon any particular subject. The rule as laid down in the *Shrock case, supra,* was in no respect changed by the holding in the *Ertrachter case.* This is evident from the fact that the *Shrock case* was cited and relied upon to support the holding in the *Ertrachter case.* In the *Ertrachter case* no attempt was made to contradict the expert witness. He was simply asked to state the names of medical authorities in support of the proposition to which he testified. In the case at bar counsel did not offer any of the medical works which he pretended to have

before him and which he used in the cross-examination of these witnesses, but he cannot be permitted to do indirectly that which he is not allowed to do directly.   He succeeded in conveying the impression to the jury that these two witnesses were testifying against recognized authority on the subject of hysteria, and that is the only purpose which we can perceive counsel could have had in the use he was making of these various medical books.   The cross-examination of these witnesses was improper and constitutes reversible error.

It is contended that the court erred in permitting the wife of the next friend to testify, upon the theory that the next friend was liable for costs and was therefore interested in the event of the suit.   It is not necessary for us to determine whether the next friend was liable for costs, as at the opening of the trial counsel for plaintiff in error stated that the negligence was admitted and that the only question to be determined by the jury was that of the amount of damages to which the defendant in error was entitled.   That precluded any possibility of a judgment against defendant in error or the next friend for costs.   As Lillian Ullrich has in the meantime attained the age of her legal majority there will be no occasion for her appearance by a next friend in another trial, and this question will not arise.

For the reason given, the judgments of the circuit and Appellate Courts are reversed and the cause is remanded to the circuit court for a new trial.

*Reversed and remanded.*

Mr. Justice Farmer, dissenting.